IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES E. WALKER, # R02343, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 22-cv-01164-NJR |
| | ) |
| DEANNA BROOKHART, | ) |
| and SHARON L. BURTCH, | ) |
| | ) |
| Defendants. | ) |

# **MEMORANDUM AND ORDER**

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 40), which Plaintiff James Walker opposes (Doc. 43).

### BACKGROUND

Walker is an inmate of the Illinois Department of Corrections ("IDOC"), currently incarcerated at Sheridan Correctional Center. He filed this civil rights action pursuant to 42 U.S.C. § 1983, seeking redress for Defendants' alleged denial of his access to the courts that occurred while he was incarcerated at Lawrence Correctional Center ("Lawrence") (Doc. 10).

In November 2020, Walker was notified by the Illinois Appellate Court, First District, that he must file a petition regarding his criminal conviction by January 9, 2021, and he informed Defendant Burtch (the law library assistant) of this deadline (Doc. 10, pp. 15, 19). Walker obtained an extension to February 9, 2021, and then a final extension

1

to March 19, 2021 (Doc. 10, p. 22). Burch allegedly denied Walker's requests to access his legal boxes to retrieve his petition and exhibits. Walker's call passes were canceled on account of lockdowns imposed by Defendant Warden Brookhart, and he was unable to access case law or legal books.

Walker missed the Appellate Court's deadline to file his document because he was unable to access his legal materials or conduct research. His case was dismissed on July 23, 2021, leaving him unable to challenge his criminal conviction and sentence in that proceeding (Doc. 10, pp. 16, 23). Brookhart and Burtch continued to deny Walker access to the law library until August 6, 2021, by which time his case had long been dismissed (Doc. 10, p. 17).

Following threshold review of Walker's First Amended Complaint, the Court allowed him to proceed on Count 1: First and/or Fourteenth Amendment access to courts claim against Burtch and Brookhart for denying Walker access to his legal boxes and the law library (Doc. 11, pp. 3-4).

Defendants argue that the record contradicts Walker's allegations, his claims are barred by the doctrine in *Heck v. Humphrey*, 512 U.S. 477 (1994), and they are entitled to qualified immunity, thus summary judgment should be granted in their favor (Docs. 40, 41).

## RELEVANT FACTS

Defendants' Memorandum supporting the Motion for Partial Summary Judgment sets forth their version of "Undisputed Material Facts" (Doc. 41, pp. 2-6). Walker's Response disputes some of Defendants' factual statements and includes additional

2

statements of fact (Doc. 43, pp. 2-10).

The parties agree that Walker was in the process of challenging his conviction and sentence in the Illinois Appellate Court (Doc. 41, p. 2; Doc. 41-2, p. 19; Doc. 43, p. 2). In his deposition,[1] Walker stated the matter was a post-conviction petition (Doc. 44, p. 40).[2] He had a January 9, 2021 deadline to file a written explanation with the Appellate Court to present the issues he believed had merit in his appeal.

In December 2020, physical access to the Lawrence law library was curtailed due to the COVID-19 pandemic (Doc. 41, p. 3). Brookhart allowed Law Library Assistant Burtch to bring legal boxes to the cells of inmates in COVID isolation, and to permit inmates not in isolation to access their legal boxes in the law library while wearing personal protective equipment ("PPE"). Walker denies that Burtch ever brought him any of his legal boxes. (Doc. 41, p. 3; Doc. 43, p. 3). In addition, several lockdowns occurred between December 21, 2020, and April 1, 2021. *Id.*

Walker showed the November 2020 letter from the Illinois Appellate Court with the January 9, 2021 deadline to Burtch; she took the letter and returned it to Walker via the prison mail system several days later (Doc. 41, p. 3; Doc. 43, p. 4). Walker was scheduled to access his legal box on December 22, 2020, but this was canceled due to a

---

[1] Defendants' Exhibit B (Doc. 41-2) contains excerpts from Walker's deposition. The Court later granted Defendants' motion to supplement their summary judgment motion with the full deposition transcript (Doc. 45). The full transcript is found at Doc. 44, pp. 4-58, and the Court will cite to that document herein.
[2] *See* 725 ILCS 5/122-1 *et seq.* Walker's attached correspondence indicates that his appointed appellate attorney had filed a motion to withdraw as counsel in the post-conviction matter pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), on the grounds that counsel believed there were no meritorious issues to present in Walker's appeal (Doc. 10, pp. 19, 22). Walker was allowed to file a written explanation of why he thought there were issues of merit in his appeal, before the Appellate Court ruled on counsel's motion to withdraw *Id.*

3

lockdown. Burtch saw Walker at his cell on that date, but he was not able to access his legal boxes (Doc. 41, p. 3; Doc. 43, p. 4; Doc. 44, pp. 33, 35). Walker tested positive for COVID-19 on December 28, 2020; he was moved to another cell, where Burtch visited him (Doc. 41, pp. 3-4; Doc. 43, p. 4). Burtch visited Walker on January 5, 2021, and weekly thereafter. *Id.* Burtch asserts during this period, Walker "did not express concerns to her regarding access to his legal boxes by any particular date." (Doc. 41, p. 4). Walker denies this assertion in part, noting that he made Burtch aware of his court deadline in December 2020 when she took and recorded his letter from the Appellate Court (Doc. 43, p. 5, 48).

On January 22, 2021, Walker was called out of his cell for law library access and showed Burtch the request for extension of his deadline. Walker alleges Burtch told him that Brookhart was only allowing legal box exchange access to inmates "in quarantine." (Doc. 41, p. 4). Walker was unsure what the "quarantine" term meant. Burtch later clarified that Brookhart had instructed that only inmates in COVID "isolation" could receive legal boxes in their cells; other inmates could see their boxes in the law library if they wore PPE. *Id.* Walker disputes part of this factual recitation, stating he was never permitted to come to the law library before he informed Burtch of his court deadline in December 2020, and his legal boxes were never brought to his cell or to another location for him to review (Doc. 43, pp. 6, 48).

Inmates were required to inform law library staff of court deadlines, which allowed them more frequent access to law library services. During the time when physical access to the law library was limited, Burtch met weekly with inmates under a court deadline in order to provide services such as copies of pleadings and case law. These

meetings did not provide inmates access to the case law reporters housed in the law library (Doc. 41, pp. 4-5; Doc. 43, p. 6; Doc. 44, pp. 18-20, 31).

In his deposition, Walker testified he was unsure whether he could have requested copies of cited authority or whether he did so (Doc. 41, p. 5; Doc. 44, pp. 32-33). Burtch stated, without providing specific dates, that she had provided copies of cases to Walker on more than one occasion (Doc. 41, p. 5; Doc. 41-1, pp. 2-3). Walker disputes these statements in part, asserting that during the relevant time, he was indigent and could not access law books before ordering case law copies, and he was reluctant to incur debt for ordering case law that he may or may not need (Doc. 43, p. 7). He further notes he was "relentless" in trying (unsuccessfully) to retrieve his petition from his legal boxes in order to draft his petition with applicable case law. *Id.*

On February 5, 2021, Walker was notified that the Illinois Appellate Court granted him a final deadline extension to March 19, 2021. Walker states his February 18 call pass to the law library and legal box exchange was canceled (Doc. 41, p.5; Doc. 43, p. 8). Defendants suggest that because the prison lockdown was canceled the day before (February 17, 2021), such lockdown would not have caused the cancellation of this call pass (*Id.*; Doc. 41-3, pp. 5-6). Walker disputes Defendants' factual statement in part, noting they did not show that the February 18 call pass was not canceled or show whether he attended law library on that date (Doc. 43, pp. 8, 56). He testified that he was not able to review his legal boxes or any research on February 18, 2021 (Doc. 44, p. 35).

Walker did not submit his memorandum of explanation to the Illinois Appellate Court before the final deadline of March 19, 2021 (Doc. 41, p. 5). Walker emphasizes that

5

he had no access to legal books or to the legal box exchange where his pleadings were stored, and his legal material was never brought to him at his cell house location from December 2020 through March 2021 (Doc. 43, p. 8).

On March 18, 2021, Walker filed Grievance No. 03-21-256 regarding his lack of access to the law library; Brookhart ultimately signed it. Defendants contend that Walker admitted he did not know whether Brookhart was aware of his needs to access his legal boxes and the law library until she responded to this grievance (Doc. 41, pp. 5-6). Walker disputes this characterization of his testimony, noting he testified, the "only thing I went off of [sic] what Ms. Burtch was informing me. And then she was made aware—I believe she was only made aware during the grievance procedure. Because she had to sign off on the grievance." (Doc. 43, p. 9; Doc. 44, p. 43).

Burtch responded to this grievance and stated she was surprised to see Walker's allegations because he had not expressed concerns about his court deadline, obtaining case law, or accessing his legal boxes in her weekly interactions with him (Doc. 41, p. 6; Doc. 41-1, p. 3). Walker disputes this, noting he alerted her to his deadline in December 2020 and told her of his need for a legal box exchange, yet she denied him access (Doc. 43, p. 9; Doc. 44, pp. 28-33). Walker testified in his deposition that he told Burtch in January 2021 that he needed to get a petition out of his legal box because of his deadline, but she told him only those in quarantine could access their boxes (Doc. 44, p. 31).

## LEGAL STANDARDS

I.  *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 governs motions for summary judgment.

"Summary judgment is appropriate only 'if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012) (quoting FED. R. CIV. P. 56(a)). *Accord Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is filed, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. *Accord Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017).

In deciding a motion for summary judgment, the court "…must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Hansen v. Finantieri Marine Grp., LLC*, 763 F.3d 832, 836 (7th Cir. 2014); *Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014). At summary judgment, the Court does not evaluate the weight of evidence, judge witness credibility, or determine the truth of the matter. Instead, the Court is to determine whether a genuine issue of fact exists. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

II.   *Access to Courts Claim*

To survive a summary judgment motion, a plaintiff must show that "defendants' official acts frustrated his pursuit of a non-frivolous legal claim." *Hyatt v. Lukas*, No. 20-

7

1114, 2022 WL 17582276, at *2 (7th Cir. Dec. 12, 2022) (citing *Jones v. Van Lanen*, 27 F.4th 1280, 1287 (7th Cir. 2022)). "[A] plaintiff must show more than just some minimal degree of impediment" to his underlying claim, *Jones*, 27 F.4th at 1288, and there must be more than a theoretical injury. *Lewis v. Casey*, 518 U.S. 343, 351 (1996).

## ANALYSIS

Defendants argue that Walker cannot establish that his appeal was meritorious, therefore he cannot succeed on his claim for denial of access to the courts (Doc. 41, pp. 8-10). It is undisputed that Walker's appointed appellate counsel filed a *Finley* motion to withdraw because he believed that the appeal had no meritorious issues. However, counsel's action does not conclusively demonstrate that Walker could not have presented a non-frivolous legal claim in his response to the motion to withdraw. *See Hoard v. Reddy*, 175 F.3d 531, 533 (7th Cir. 1999) (claim for damages for denial of access to the courts "does not require the plaintiff to prove that, had it not been for the denial, he would have won his case. It is enough that his case was not frivolous.")

Walker asserts that his "opening petition" in the post-conviction matter raised the arguments that multiple convictions based on the same act violate due process and double jeopardy, and sentences that exceed statutory authority are void (Doc. 43, pp. 13-14). Specifically, he would argue his conviction for unlawful restraint was void and must be vacated, because the statutes on aggravated kidnaping and aggravated criminal sexual assault contain the exact same elements as unlawful restraint[3] (Doc. 43, p. 14). The record

---

[3] According to the online Individual in Custody Search Page of the IDOC, Walker was convicted of all three of these offenses and appears to be serving consecutive sentences.
Https://idoc.illinois.gov/offender/inmatesearch.html (last visited Feb. 18, 2025).

before the Court does not include any material from Walker's direct appeal or post-conviction petition, so no assessment can be made as to whether these arguments might have had merit in the appeal at issue. As relevant here, however, these claims are not frivolous on their face and satisfy this element of an access-to-courts claim. *See Jones*, 27 F.4th at 1287; *Hoard*, 175 F.3d at 533; *Hyatt*, 2022 WL 17582276, at *2.

The other element is whether Defendants' actions impeded Walker's ability to present his response to the Illinois Appellate Court. Defendants assert that the record contradicts Walker's allegations regarding access to his legal boxes and his ability to obtain case law to aid in drafting his explanatory response. But Walker consistently testified in his deposition, under oath, that he informed Burtch in December 2020 of his deadline, told her he needed to get his petition out of his legal box, showed Burtch his request for a deadline extension, and repeated the request to access his legal box in subsequent conversations with Burtch, yet he was never permitted to retrieve his legal documents from his box until long after his appeal was dismissed (Doc. 44, pp. 14-15, 18-20, 28-31). Lacking access to his petition, Walker could not determine what case law he needed to obtain from the law library.

A trier of fact could believe Walker's account—that Burtch knew of his deadline to submit his explanation to the court but failed to allow Walker access to his legal boxes to retrieve his petition—and conclude that Burtch hindered his ability to pursue his post-conviction appeal. The Court cannot make such a credibility determination at the summary judgment stage. The existence of this dispute of material fact is enough to preclude summary judgment.

9

However, Defendants' argument that the *Heck* doctrine bars Walker's claim for damages for denial of his access to the courts is persuasive. *Heck v. Humphrey* instructs that a § 1983 plaintiff whose claim for damages would "necessarily imply the invalidity of his conviction or sentence" cannot pursue the claim unless the plaintiff first demonstrates that the conviction or sentence has already been "reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Heck*, 512 U.S. at 487, 489. The court must dismiss the claim if a judgment in the plaintiff's favor would contradict the validity of the conviction or sentence. On the other hand, the action may proceed if a favorable § 1983 judgment will *not* demonstrate the invalidity of the plaintiff's outstanding criminal conviction/sentence. *Heck*, 512 U.S. at 487.

Here, Walker is not directly attacking his conviction or sentence, nor could he under § 1983. Nonetheless, his access to courts claim runs directly into the *Heck* bar, because the legal matter he was allegedly prevented from pursuing was a post-conviction challenge that sought to overturn all or part of his criminal conviction and/or sentence—and that conviction/sentence has not been reversed or invalidated. The Seventh Circuit in *Hoard* held there is no exception to the *Heck* bar for a prisoner who sought damages for denial of access to the courts for his post-conviction proceedings. *Hoard*, 175 F.3d at 533. "[W]here the prisoner is complaining about being hindered in his efforts to get his conviction set aside, the hindrance is of no consequence if the conviction was valid, and so he cannot get damages until the conviction is invalidated." *Hoard*, 175 F.3d at 534.

Walker is still serving the sentence imposed in the criminal case from which he sought post-conviction relief, and that conviction still stands. A damage award to Walker

10

for the alleged denial of his access to the courts to challenge that conviction would necessarily imply that the conviction or sentence was invalid. "In the setting of *Heck,* there is nothing corresponding to a colorable claim [that could lead to damages]; either the conviction was invalid, in which case the defendant suffered a legally cognizable harm, or it is not and he did not." *Hoard*, 175 F.3d at 534. Accordingly, under *Heck* and *Hoard*, because Walker's conviction is intact, he cannot obtain monetary damages even if he could demonstrate that Defendants hindered his access to the court to challenge the conviction.[4] Summary judgment is warranted on this ground. In light of this conclusion, no discussion of the qualified immunity issue is necessary.

CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (Doc. 40) is **GRANTED**. This action is dismissed without prejudice as barred by *Heck v. Humphrey* and its progeny. The Clerk of Court is **DIRECTED** to enter judgment consistent with this Order and to close this case.

If Walker wishes to appeal this Order, he must file a notice of appeal with this Court within **30 days** of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). If Walker chooses to appeal, he will be liable for the $605.00 filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-56 (7th Cir. 2008). Moreover, if the appeal is found to be without merit or frivolous, Walker may incur a "strike" under 28 U.S.C. § 1915(g).

---

[4] The Seventh Circuit has noted that injunctive relief may be available even where a damages claim is barred by *Heck*. *Hoard*, 175 F.3d at 533-34. Walker did not request any non-monetary relief in this action (Doc. 10, p. 18).

11

A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no later than 28 days after the entry of judgment, and this 28-day deadline cannot be extended.

**IT IS SO ORDERED.**

DATED: February 18, 2025

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**